This is a suit for the rescission of a sale of an undivided interest in two certain tracts of land, one situated in Lafourche Parish and the other in Terrebonne Parish, on account of lesion beyond moiety. The action is one authorized under Article 2589 of the Revised Civil Code which provides that, "if the vendor has been aggrieved for more than half the value of an immovable estate by him sold, he has the right to demand the rescission of the sale, even in case he had expressly abandoned the right of claiming such rescission, and declared that he gave to the purchaser the surplus of the thing's value."
Plaintiff, together with a brother and two sisters, were the owners in indivision of the two tracts of land in question both comprising a total area of approximately 24 acres of which some three acres of the tract in Terrebonne Parish is classified as being partly woodland. Both tracts originally comprised exactly 27.118 acres. They are divided by Bayou Blue which forms the division line between the two parishes. From each of the front corners a lot measuring 123 feet by 274 feet has been segregated and sold causing a reduction in acreage to the amount of about 24 acres as stated. Plaintiff sold his undivided one-quarter interest to the defendant, J.A. Lovell, by an act of sale dated November 20, 1937, for the price and sum of $150 cash.
The petition contains the allegations that are usually made in a suit of this character, plaintiff averring that he is a blind, illiterate negro man, living in the State of Texas and had no idea at the time of the sale of the value of the property. He alleges further that defendant is a cultured white man which made it easy for him to be imposed on as he has always been taught to believe that men of that character and standing would scorn to take advantage of an ignorant, blind negro. He alleges that his undivided interest in the property was worth considerably more than $300 at the time of the sale and that since then he has discovered that it lies adjacent to a potential oil field worth a large sum of money.
In his answer the defendant admits the execution of the act of sale but denies that when he acquired plaintiff's interest in the property in November, 1937, it had a value of $300. He denies that he imposed on plaintiff in any manner and that when he purchased his interest the land had only an agricultural value and that at the rate he paid, the price given was full and adequate, especially as the interest which he therein acquired was owned in indivision.
The learned district judge after assigning extensive written reasons stated that *Page 273 
he was "unable to hold that it has been satisfactorily shown that the price then (at the time of the sale) paid to plaintiff by the defendant was less than half of its then fair value," and he accordingly rejected the demand and dismissed plaintiff's suit at his costs. This devolutive appeal was then taken by plaintiff and was by him perfected.
It is undisputed, as in fact it is provided by the Code itself, that in an action of this kind, "to ascertain whether there is a lesion beyond moiety, the immovable must be estimated according to the state in which it was, and the value which it had at the time of the sale." C.C. Art. 2590. Tested by that criterion the value of the property to be estimated in this case is that of agricultural lands of the same quality in the neighborhood, as any value it may have otherwise would be in relation to its proximity to a potential oil field as alleged in the petition and which, of course, would be purely conjectural and speculative.
Plaintiff's brother, Henry Dick, testified as a witness in his behalf. He had farmed the property for his mother, who, it would appear, owned an undivided one-half interest as widow in community with usufruct of the other half. She died in March, 1937, a few months before the sale herein sought to be rescinded. The witness states that prior to her death he gave his mother as rental for her share in the crops which he made, about $75. He considers the value of the land "not under $60.00 an acre," which seems to be merely an arbitrary figure set by him as he does not give any reason on which to base it. He states that during the year 1937 there were offers made to him and his co-owners for the sale of the property but does not say what the price offered was. He states that all that part of the property in Lafourche Parish is cultivable but that about three acres of that on the Terrebonne side of Bayou Blue has wood on it. It can be cleared and made cultivable.
Lovincy Soignet and Olivier Bergeron, both white farmers living in the neighborhood, placed a valuation of $60 per acre on the property, the latter making particular reference to the three acres of woodland on the tract in Terrebonne Parish which he values at $50 per acre.
The defendant produced two witnesses, Charles J. Coulon, a Notary Public who is also engaged in abstracting and insurance business, and Sidney R. Coulon, Deputy Assessor for the Parish of Lafourche. Mr. Charles Coulon places a valuation of from forty to fifty dollars an acre on the property, but admits that he has only a limited knowledge of values of land in that neighborhood. He considers its value materially lessened by reason of the fact that front lots have been carved out of each tract and also that it is owned in indivision. He also refers to the fact that some of the land is woodland. Mr. Sidney Coulon who seems to be familiar with values of land in that community estimates the property at $60 per acre of cultivable land and $50 per acre of woodland.
Mr. Lovell, the defendant, is a civil engineer who is familiar with lands and their values in Lafourche and Terrebonne Parish. He classifies the property in which he bought plaintiff's interest as ordinary farming land with about one-third of that tract situated in Terrebonne Parish not being susceptible to cultivation. He thinks that the cultivable land has a value of about forty to forty-five dollars per acre and the remainder five to ten. In relating the circumstances under which he acquired an interest in the property he states that he didn't know the plaintiff and had a little trouble in finding out where he lived. Finally, he was informed that he resided at Texas City in the State of Texas. As he had occasion to go to Galveston he thought he would go by way of Texas City to try and contact him and offer to buy his interest. He located the plaintiff and found out in talking to him that he was blind. He then asked him if he wanted to sell his interest in the property and plaintiff asked him to make an offer which he did. When he offered $150, plaintiff, in apparent surprise, told him, "Boss, you must have found gold on that property. You are offering me that much money." He then told him that he had never received any revenues from the property in his life and that he would be glad to sell. They then went to a notary's office where the sale was consummated.
Under the facts as thus disclosed by the record we believe that the district judge correctly concluded that plaintiff had failed to satisfactorily show that the price he was paid was less than half of the value of the property at the time of the sale. We believe that a fair valuation per *Page 274 
acre for the 21 acres of cultivable land, based on the average of the estimates given, would be $50 or a total of $1,050. The woodland, we think, can fairly be valued at $40 an acre or $120. The total value of the whole tract would then be $1,170. At the rate paid by defendant for an undivided one-quarter interest, the total value would have been $600, which in itself is slightly more than half of the value at which we have arrived. But, it must be borne in mind that the sale which is here attacked was of an undivided one-quarter interest in the property and we believe that it is a matter of which the court can well take judicial cognizance, that to a prospective purchaser, a property owned in indivision has not the same marketable value as one that is held by the seller in sole ownership. Especially is this so in this State where the law forces no one to remain owner of property in indivision with another and a partition either in kind or by licitation has to be effected upon being invoked by any co-owner. It might be difficult to fix an exact amount of depreciation in value arising out of the undivided ownership but the fact remains that there is involved annoyance and inconvenience which may be thereby occasioned not to mention the ever present possibility of a partition suit with its attending costs and expenses, and these are matters which cannot be overlooked in arriving at a true valuation.
Plaintiff, appellant herein, having been unable to point out manifest error in the judgment appealed from, the same stands affirmed at his costs.